We will hear argument first this morning in case number 18 1259 Jones versus Mississippi, Mr. Shapiro, Mr. Chief Justice, and may it please the court that a law recognizes the scientific legal and moral truth that most children, even those who commit grievous crimes are capable of redemption. After Miller and Montgomery, there is no denying that the permanent incorrigibility rule is settled law. Only juvenile homicide offenders who are permanently incorrigible may be sentenced to life without parole. A paragraph in Montgomery about formal fact finding has created confusion, but it cannot mean that no determination of permanent incorrigibility whatsoever is required, because that would obliterate the crux of the decision. Any rule of law requires deciding if the defendant fits within the rule, but Mississippi's courts have denied the permanent incorrigibility rule itself. And the state continues that denial in this court in remanding this very case for resentencing. The Mississippi Supreme Court did not say a word about the permanent incorrigibility rule and affirmatively misinterpreted the law by stating that is unconstitutional. If and only if the sentencing judge does not consider youth related circumstances. On remand, the sentencing judge made clear he was weighing aggravators and mitigators, not assessing permanent incorrigibility. Even under an implicit finding rule that usually assumes the judge knows the law and implicitly finds the defendant incorrigible when imposing a life without parole sentence, there is no implicit finding here. That's why Mississippi continues to dispute the permanent incorrigibility rule itself. The court should enforce settled law by remanding for an answer to the decisive question. Is Brett Jones, who committed a crime just weeks after turning 15, permanently incorrigible? Mr. Shapiro, I'm having just a little trouble figuring out what exactly it is that you're looking for. We know it can't be a formal finding, as I think you indicated, because of Miller and Montgomery's statements. And obviously you want more than just a hearing at which you'd have an opportunity to raise the arguments. But what is it in the middle there? Is it just a statement on the record at some point during a hearing? Is it, I don't know, some kind of informal finding? What exactly do you need? On the most fundamental level, Your Honor, what we need is a sentencing judge who understands that permanent incorrigibility is the dispositive rule and determines whether the defendant fits within that rule. And there are any number of ways that it could be done. One is through words, not magic words, but words that convey in substance the idea that the defendant is permanently incorrigible, going to commit more crimes, going to recidivate, etc. And one other is that usually you can presume an implicit finding based on the presumption that the judge knows and implies the law, and therefore that a sentence of life without parole implicitly is a determination of permanent incorrigibility. Just not here, because this is within the context of a state system that does not recognize the permanent incorrigibility rule to begin with. Well, at the hearing that took place here, the irreparable corruption, I guess, was the label they used. That was certainly argued by the counsel. You know, he said you have to distinguish between the juvenile offender whose crime reflects unfortunate yet transient immaturity and the rare offender whose crime reflects irreparable corruption. The judge certainly referred to Miller, said he considered each and every factor that is identifiable in Miller, and concluded that the petitioner was not entitled to the benefit of the leniency provided in Miller. I mean, is the problem really just that the judge didn't quote enough passages from Miller? He certainly cited it. No, Your Honor, that's not the problem. The fundamental problem is that the judge does not appear to have understood that permanent incorrigibility is the decisive rule that he needed to apply. And, in fact, in remanding the case, the Mississippi Supreme Court said that the sentence is unlawful if and only if the judge does not consider use-related factors. And that was an affirmative misstatement of the law. And then the judge said that he was weighing aggravators and mitigators rather than making an assessment of permanent incorrigibility. This is not about a formal declaration. It is about a judge correctly applying the settled rule that this court has laid down. Well, the evidence of what he said at the hearing, I think, is not a finding of a historical fact. And you talk about things like intellectual disability and the like. Permanent incorrigibility strikes me as different. It's more a judgment rather than a specific fact. And from that perspective, I'm just not sure what he said isn't enough. This court has made it clear that permanent incorrigibility is incapacity for rehabilitation. And there is no way I see on the record to conclude that the judge made a conclusion about that, not a finding or even some kind of predictive judgment. And, again, he was operating under instructions that affirmatively said he didn't have to make that bottom-line determination. He only needed to consider factors. And as long as he did so, the sentence was constitutional. Thank you, counsel. Justice Thomas? Yes, thank you, Mr. Chief Justice. Counsel, following up on the Chief Justice's line of questioning, what if the judge did exactly what you said was required and stated on the record that there had to be a finding of permanent incorrigibility? And went on to do exactly what was done here. Wouldn't it be implicit in that sentencing that the judge made the finding of permanent incorrigibility? Yes, I think so. In this case, for the judge to have said that, it would have been contradicting the instructions that were given by the Mississippi Supreme Court in remanding the case, which said that all you have to do is consider youth-related factors. But the statement that Your Honor just alluded to would make it very clear that the judge understood that he needed to determine permanent incorrigibility, and then the sentence of life without parole would implicitly reflect that determination. It would be an implicit finding. Would you be, and I'm just curious here, would you be able to make your argument had we not decided Montgomery? Yes, Your Honor, I believe so. It is certainly, yes, it is certainly true that Montgomery made the rule clearer, the permanent incorrigibility rule in interpreting and construing Miller. And it's important to note that one of the reasons that you can't presume an implicit understanding of Montgomery in this case is that the judge issued the sentence before Montgomery was issued. But Miller itself does say on pages 479 to 480 that the judge has to distinguish between irreparable corruption and transient immaturity. And then Montgomery repeats that seven times as an indispensable part of its conclusion that Miller is retroactive. But did Miller, on its face, without the gloss of Montgomery, did it actually say that a certain finding or a certain procedure was required? It did not say that a certain finding was required. It did say that there has to be, the judge has to distinguish the transiently immature from the irreparably corrupt. And the only way for that to happen, one must infer, is the court has to decide which side of the line the defendant is on. That can be an implicit determination. It can be a more explicit one. But you have to know that the judge properly understood the rule and decided whether the sentence fits within it. Ordinarily, you can presume that the judge knows and correctly applies the law. But that presumption does not apply here because of the affirmative misstatements of the law that I've alluded to. I'd like one more try at a world without Montgomery. Would you tell me whether or not you think, without, again, the gloss of Montgomery, you think that Miller is a substantive rule or a procedural rule? And if you think it is substance, again, without the gloss of Montgomery, give me an indication of why you think that. I think that it is a substantive rule that only permanently incorrigible juveniles can be sentenced to life without parole. I think that because the court says on 479 to 480 of Miller that there has to be a distinguishing between the transiently immature and irreparably corrupt. And I also contend that it follows as a procedural consequence of that substantive permanent incorrigibility rule that the judge has to determine whether the defendant is permanently incorrigible. Thank you. Justice Breyer? I would follow up on Justice Thomas and just say, if you were writing the opinion for the court in this case, how would you put it? The first part, I think, is fairly easy to say. In Miller, we decided you can only sentence and cannot sentence a juvenile to life without parole unless he is permanently incorrigible. The state has leeway to decide the procedure through which this decision will be made. And now what? Yes, Your Honor. I would write the decision to answer the question to say that the court has to resolve whether or not the defendant is permanently incorrigible in order to impose the sentence. And that there are different ways to tell if the judge resolved that question. One is words that convey in substance, not magic words, but words that convey in substance that the defendant is going to commit more crimes or can't be rehabilitated. The second, and the court has options here, we think that that is the better rule that requires some sort of explicit statement, not magic words. But given the gravity of the constitutional interest or the deprivation that's occurring here, we think that is the better rule. The other option that the court has is to say that there is an implicit finding rule. That ordinarily, you presume that the judge understands the law, understands the permanent incorrigibility rule, and that the life without parole sentence reflects a determination that the defendant is permanently incorrigible. But that presumption doesn't apply here because of the affirmative misstatement that I've alluded to. And either way, the court could make it clear that there is plenty of room for state experimentation and innovation as to the procedure, as to who bears the burden, what is the standard of proof, what is the standard of review, etc. But the one thing it has to do is resolve the question of permanent incorrigibility. Thank you. Justice Alito? Good morning, Mr. Shapiro. If you have it in front of you, could you just repeat the first sentence of your presentation this morning? Yes, Your Honor. The first sentence was, Settled law recognizes the scientific, legal, and moral truth that most children, even those who commit grievous crimes, are capable of redemption. Yeah, I think you are. I mean, this is fascinating. You want to take us and you want us to take the courts of this country into very deep theological and psychological waters. Do you think that there are any human beings who are not capable of redemption? Well, Your Honor, I think that there are many psychologists who can very much testify and do testify that particular individuals are permanently incorrigible and can't be rehabilitated. And in fact, as we speak, courts across the country are resolving the question of permanent incorrigibility. I mean, there are a lot of people. They're not psychologists, maybe, but there are a lot of people who think that every human being is capable of redemption. There's actually a famous quote by Gandhi who says exactly that. There are a lot of Christians who believe that. You think of a good thief on the cross. So what if the judge says, you know, wow, the Supreme Court says I have to determine whether this person is capable of redemption. I believe that every human being is capable of redemption. What do you do with that? I think the inquiry is capacity for rehabilitation, and I think that the judge needs to do what every judge does and is doing in these cases, which is to hear evidence, evidence of criminal record before and after the crime, testimony about the perpetrator, the crime itself is very much relevant, and to make a determination as to whether the defendant is going to recidivate or has the capacity to be rehabilitated and not to recidivate. It's not a theological conception. It is a determination of whether the defendant has the capacity to rehabilitate and not recidivate, and in the event that the judge does make an error and the person's capacity for rehabilitation is not realized, they're never getting out. They're dying in prison anyway because the ultimate decision is made by the parole board as to whether a release actually occurs. Now, you read both Miller and Montgomery very broadly, and there certainly is some language in both opinions that you are able to cite, but if we look strictly at the holdings in those cases, what Miller held, and this is what it said expressly, we therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders, and what Montgomery said was we hold that Miller set out a substantive rule, and what followed from that was that it was retroactive. So if we just follow the holdings of those cases, we get to a much narrower rule of law than the one that you're proposing. Isn't that the case? No, Your Honor, and that's because the holding of the case includes the indispensable reasoning. The only reason, the only reason that Montgomery held that Miller was substantive and thus retroactive is that it set out a substantive rule that only permanently incorrigible juveniles can be sentenced to life without parole. Now, let me ask you just one more question before my time has expired. What would you say to any members of this court who are concerned that we have now gotten light years away from the original meaning of the Eighth Amendment and who are reluctant to go any further on this travel into space? I don't think this goes any further, Your Honor. This is just a, the court has laid down a permanent incorrigibility rule, stated it in Miller, restated it seven times in Montgomery as an indispensable part of this whole, of the holding and the conclusion, and simply saying that a court has to decide whether a defendant fits within a rule of law already laid down by this court is no journey at all. Thank you very much. Justice Sotomayor? Counsel, in your cert petition and in your briefing, you framed the question presented as a narrow one about the need for an express finding of permanent incorrigibility. You did not seek, sir, on the question of what other procedures Miller might require, correct? I think Your Honor said express finding of permanent incorrigibility, and that is not in the question presented. It just, it says finding, and it's really my friends on the other side who are trying to load up the case with affirmative, express, explicit. So if you understand that Miller, because it said it, didn't require an express finding, in sentencing, for example, in regular sentencing, a district court judge says, I've considered the factors in 3553A, and this is the sentence that I think is adequate. And we say that's enough. Here the judge said, I've considered Miller and all of the factors it talks about, and it's just been told that one of them, most importantly, is incorrigibility. And I don't see the state in that transcript arguing otherwise, meaning that incorrigibility is not significant. In fact, they addressed it and made the argument he was incorrigible. So under those circumstances, why isn't that the beginning and end of this case, i.e., the judge made an adequate finding under Miller? The reason, Your Honor, is that in demanding the case, the Mississippi Supreme Court said, all you have to do is consider factors, and as long as you consider factors, the sentence is constitutional. But the judge went further and said, I'm considering the Miller factors, not the state factors. Yes. Considering the Miller factors without treating capacity for rehabilitation, permanent incorrigibility, as a dispositive rule, is not sufficient. Well, then you're getting back to, you want magic words. Because I don't see how this is any different than a regular sentencing where a judge says, I've considered the 3553 factors. We don't question whether they did it or didn't do it. We take them at their word. And that was the entire argument at the sentencing. In the federal sentencing context, Your Honor, it is usually the case that you presume, even though the judge doesn't say it in most cases, that she is imposing the minimum sufficient sentence. That is just implicit. And the reason it's implicit is that one assumes that the judge correctly understands the law. But what happened in this case was that the Mississippi Supreme Court said, all you have to do is consider these factors. Considering the Miller factors is not the same, this is a critical point, is not the same as a bottom line determination of permanent incorrigibility. It would not be sufficient in an Atkins case, for example, for the judge to consider intellectual disability, but then decide that the defendant's intellectual disability was outweighed by some other factors. And it's not sufficient just to consider the Miller factors without a bottom line determination of the eligibility rule, whether the defendant is capable of rehabilitation or permanently incorrigible. Thank you, counsel. Justice Kagan? Mr. Shapiro, what you just said is exactly what I want to ask you about. Because your argument is that Miller and Montgomery set out not just a process, not just a rule that has to be considered, but instead a rule, a rule, a substantive rule that you can give an LWOP sentence only to a small category of people, call them the irredeemables or the incorrigibles or what have you. And the government and Mississippi contest that understanding, and I want to get your reaction to their arguments. What the government says is that all this talk about incorrigibles, that's just really a label for the final judgment that a court reaches after it considers youth during sentencing. And what Mississippi says, in addition, is it says that the whole point of Miller was just to prevent against the excessive risk of disproportionate punishment, but that the essence of it is a procedural requirement about considering youth. So why aren't they right? The reason they're not right, Your Honor, is one, that Montgomery says something very different, and two, that it could not have said what they contend and arrived at the conclusion that Miller is substantive and thus retroactive. Montgomery reiterates seven times as an indispensable part of its conclusion that there is a substantive and thus retroactive rule. So what that substantive rule is, that substantive rule is that only permanently incorrigible juveniles can be sentenced to life without parole. And simply considering a group of factors or the Miller factors as they've sometimes been called, that is a procedural undertaking. Because whether you arrive at a life without parole sentence through a mandatory procedural route or through a discretionary procedural route, that is a procedural question. The substance of the sentence is life without parole. And merely considering factors does not fit within either of the Teague substantive rule categories. It doesn't make certain primary conduct not criminal, and it does not take a sentence off the table for a class of people. The only thing that does that is exactly what Montgomery says, which is that only permanently incorrigible juveniles can be sentenced to life without parole. And Mr. Shapiro, this goes back to a question that Justice Thomas asked you. But let's assume that you are right about what Montgomery says. And as you say, Montgomery said it not one time or two times or three times, but something like seven or eight times. But suppose you think that that's an aggressive reading of Miller, that although you said, you know, on page 479, Miller says this, that that wasn't really the thrust of Miller. And in fact, Montgomery, you know, read it quite aggressively and that there's a gap between the two. If that's right, I mean, you can first tell me whether you think that's right, but if it's right, which opinion should we look to and why? Yes, Your Honor. And so to the first part, I mean, the language on 479 to 480 of Miller says, you know, it speaks of the distinction between the juvenile offender whose crime reflects unfortunate yet transient immaturity and the rare juvenile offender whose crime reflects irreparable corruption. And then it says, although we do not foreclose a sentencer's ability to make that judgment, that judgment referring to the previous sentence and the distinction between the two classes, although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require to take into account how children are different. I don't think there's any way to read that as optional. The court has to distinguish under Miller between the permanently incorrigible and the transiently immature. As to the second part of the question, this court's construction of its own precedent is authoritative and becomes part of the edifice of stare decisis. And so Montgomery's construction of Miller is absolutely entitled to stare decisis deference, and to deny that is to imperil the interest in the stability of the law that stare decisis is designed to. Thank you, Mr. Schmira. Justice Gorsuch? Good morning, counsel. I'd actually like to pick up more or less where you left off with Justice Kagan. Let's assume for the moment that we might view Miller as a procedural requirement and a modest one, and Montgomery is significantly expanding and maybe creating a new substantive right during the process of reportedly doing the Teague analysis. What do we do with that? I mean, if it did create a new right, and just work with me on that assumption of the new substantive right, wouldn't we need then a subsequent decision deciding whether that new right should be retroactively applied under the Teague plurality analysis? As to whether it should be retroactively applied, I do want to first stress, Justice Gorsuch, that this case is on direct review. Of course, it's different than the Malibu case that was on collateral. I understand that, and I've got questions for your colleague coming up next on that, but if you could just stick with my question for the moment. Yes, Your Honor. It's not unheard of, certainly, for the court to construe and interpret precedent in a subsequent case, including cases on direct – I'm sorry, including cases even on collateral review. Unlike this case, I mean, take the Hall case, which was on collateral review, interpreting the Atkins requirement. But it is a little unusual in the name of purportedly deciding the retroactivity question under Teague to then create a new right and then not consider whether it should be applied retroactively. It's a little bit of an anomaly, which maybe raises for me the next question. What about Teague? I mean, we've been applying this plurality opinion from Teague for some time, watershed rules of criminal procedure – we've never found one – and substantive constitutional rules, and we wind up turning a procedural rule into a substantive rule in order to have retroactive effect. It kind of brings to mind Justice Jackson and Brown v. Allen, second-guessing all these state final judgments. From an original matter, at least, what authority do we have to be reconsidering state final judgments in this way? Well, the first thing I want to stress in response to that question is that this is a majority rule applied to the vast majority of states. It's really Mississippi that is an outlier in reviewing this. But to answer the question, Justice Gorsuch, there is, of course, a very long line of cases establishing that this court does have authority to review state court decisions retroactively. But again, in this case, which isn't on collateral review at all, I don't think that it bears a direct relationship. Thank you, counsel. Justice Kavanaugh? Thank you, Chief Justice, and good morning, Mr. Shapiro. You started today by referring to settled law, but then you said that the paragraph in Montgomery had created confusion. But the paragraph in Montgomery is part of the law, of course, and I guess I'm not seeing it as all that confusing, at least on its own. I know you're a teak point, but on its own, it seems very clear in saying multiple times in that paragraph that a finding of facts about incorrigibility is not required. First question, do you agree that a finding of facts regarding incorrigibility is not required? No, because that paragraph is referring to a formal finding, and I know that it doesn't use that word throughout the entire paragraph, but I do think it is clear from the paragraph that the court is talking about one thing and not jumping around between different types of finding. And so the modifier formal, a formal finding, is what the court is referring to in that paragraph. You noted this, but it does not use the word formal at least the first two times it's used, and I'd be curious what the distinction between a formal finding of fact and an informal finding of fact might be in this serious context. As to the first part of the question, I think the specific control of the general and the court should look to the phrase that provides more information about what the court is talking about in that paragraph rather than less information, and that phrase is formal fact finding. And I think that a formal fact finding might even require some kind of particular verbiage or heightened explicitness or formality, and what we are saying is that that would certainly be sufficient to satisfy the Eighth Amendment, but also in the ordinary course you can have a sort of implicit finding where you presume the judge knows the law and that a sentence of life uphold implicitly reflects a determination of permanent incorrigibility. Okay, so let me ask you this. When the sentencing scheme is discretionary, won't the judge necessarily consider youth, and in particular because defense counsel will invariably raise the defendant's youth as a reason not to impose life without parole, and even apart from that, that will be the common sense of the situation when you're dealing with someone who committed a crime at 15, as we have here, that you'll be considering that. That will really be the centerpiece, you would think, in most cases. So when the judge then determines that the sentence should be life without parole, won't the judge necessarily have made that informal finding or that judgment or that conclusion that you're seeking? A couple of points, Your Honor. The first is it's not enough just to consider the fact that the defendant is young or to consider youth. The question, the substantive rule of permanent incorrigibility has to be answered, has to be resolved. And in this case, the judge didn't resolve it, not implicitly, not explicitly, because he said he was just weighing aggravators and mitigators, and the state court system does not recognize that permanent incorrigibility is an eligibility rule that has to be resolved. And by analogy to the death penalty mitigating circumstances context, there, as you know, the court over many years has required consideration of mitigating circumstances, but in that context does not require any particular finding of fact or any particular conclusion. It leaves it to the sentencer to make that judgment based on consideration of all the circumstances. I'm putting aside for the moment the requirement that there be one aggravating circumstance, but beyond that there's no particular finding necessary. Isn't that a similar situation to what we have here? That's not the case when it is an eligibility rule like we have here, when it is like the Atkins eligibility rule based on intellectual disability or the Ford eligibility rule based on insanity. In those cases, the court requires a determination. It may not be a formal finding, and again, that is not what we are saying is required here, but the judge has to determine whether the defendant fits within the class that can be subjected to the punishment. Okay, my time's up. I'm sorry, Mr. Shapiro. Thank you. Justice Barrett? Good morning, Mr. Shapiro. I have a question about an as-applied Eighth Amendment challenge here. I take it that you think that Mr. Jones can bring such a challenge? I do, yes. Then why isn't that the primary protection? If the judge applies the wrong factors, as you say happened here, why isn't then the case that he's better off not challenging the procedure but simply directly challenging the substantive decision that he's permanently incorrigible? In order to challenge the substantive procedure that he's permanently incorrigible, he needs to be proceeding in front of a judge who understands that permanent incorrigibility is a dispositive rule, and here the judge didn't understand that that was what he had to decide. I absolutely believe that Brett substantively is not permanently incorrigible. His grandmother, the wife of the victim, testified on his behalf. A correctional officer spoke of his rehabilitation, his extraordinary record in prison, how he is an incredible worker and tries to get along with everyone. Beginning from a kid who had just turned 15 and who committed a murder for the most immature reason possible, a teenage infatuation, there is an extraordinary story here showing that Brett is an individual who is fully capable of rehabilitation, but because that wasn't even treated as a substantive rule, that's not what the determination that the judge was making was about. Then why can't you appeal that? If you argued below that he was not permanently incorrigible, and essentially one way of looking at what the trial court did is did not make a finding, did not say he was permanently incorrigible, and you're saying as a matter, this is a violation of the Eighth Amendment then to sentence him to life without parole, why can't you just raise that challenge, you've preserved it, and raise it on appeal? We did, Your Honor, but the problem is that the Mississippi courts don't recognize that permanent incorrigibility is a rule. So just saying that and showing that your client is capable of rehabilitation isn't sufficient to demonstrate that the sentence is off limits for him, and that's the very problem in this case. There's just no determination that the rule applies to my client. Let me just interrupt you then. If it's clear in the cases, or if we make clear in this case, that it violates the Eighth Amendment to sentence a juvenile to life without parole if that juvenile is not permanently incorrigible, then the law is clear, and I guess I still don't understand. Let's talk about collateral review. If this goes to a federal court on 2254, and there is no factual finding for the federal court to defer to, and the law has been misapplied, what about that? Then can you get relief on collateral review? To answer the first part of your question, Your Honor, yes. Going forward, absolutely extraordinary evidence to the contrary, like I'm going to sentence you, I don't care what the Supreme Court says, but yes, you absolutely would be able to presume absent evidence to the contrary, that the judge correctly understands the law, and that the sentence reflects an implicit finding of permanent incorrigibility. To the collateral review context, this is a substantive rule, a permanent incorrigibility rule, going all the way back to Miller. It is the majority rule among the states, and in large part, the statute of limitations has run. Thank you. Mr. Shapiro, do you want to take a minute to wrap up? Thank you, Mr. Chief Justice. Mississippi and its courts do not recognize the permanent incorrigibility rule. In this very case, the state Supreme Court's remand opinion did not mention that rule, and instead said that a life without parole sentence is lawful so long as the sentencing court considers use-related factors. Brent never really had a chance to show that he wasn't permanently incorrigible in any kind of meaningful way, because the court had been told that it doesn't need to resolve that question against him in order to sentence him to life without parole. And to allow the permanent incorrigibility rule to be flouted is to discard Miller and Montgomery, and to undermine stare decisis and the interest in stability that it protects, this court does not announce rules for them to be ignored. So whatever form the determination should take, Mississippi's courts need to answer the question they have evaded, is Brent Jones permanently incorrigible? Thank you. Thank you, counsel. Ms. Noble? Mr. Chief Justice, and may it please the court, in 2013, Jones's mandatory life without parole sentence for the brutal murder of his grandfather was set aside after the Mississippi Supreme Court held that Miller v. Alabama announced a substantive rule of constitutional law prior to this court holding the same in Montgomery v. Louisiana. Miller held that mandatory juvenile life without parole sentences are unconstitutional because they pose too great a risk of disproportionate punishment. The constitutional flaw in such mandatory schemes is that they make use in all that accompanies it irrelevant. To address that flaw, senators must consider how youth and its attendant characteristics may diminish the penological justifications for punishment before imposing a life without parole sentence. After Miller, Petitioner Jones received an individualized sentencing hearing where the sentencing court considered the mitigating circumstances of Jones's youth and its attendant characteristics before exercising discretion to impose a life without parole sentence. Jones received what this court in the Eighth Amendment requires. Jones now contends that his sentence is still unconstitutional because the sentencing court did not also make a finding that Jones is permanently incorrigible. But that premise is wrong for three main reasons. Miller implicitly holds, and Montgomery explicitly states, that a finding of incorrigibility isn't required. Second, the individualized sentencing line of cases on which Miller relied demonstrates why Jones's position is unavailing. And lastly, whether a crime reflects permanent incorrigibility or transient immaturity isn't a separate inquiry apart from the consideration of youth. Instead, this court has used such terminology descriptively as a way to describe a crime the circumstances of which either do or do not make a life without parole sentence grossly disproportionate. And as this court explained in Kansas v. Carr, whether mitigating circumstances exist to sufficiently warrant a lesser sentence is a judgment call or perhaps a value call. That is, it is a normative judgment reached after Miller's evaluated process. That process was followed- So I asked Mr. Shapiro starting out what exactly it was he was looking for, and I have to say it didn't seem like very much. I think one sentence sort of articulating the holding of Miller and another sentence saying that's what I've determined or that's what I find, as I understand them anyway, I think that would be enough. Why isn't that acceptable to the state? The question is have they applied Miller just the sentence saying they have. As Justice Sotomayor said, sentencing judges all the time refer to what findings are required, and we don't question their statements that they've considered those. I think the primary disagreement that we have with Petitioner Jones' argument is he continuously relates this to Atkins and Ford, that permanent incorrigibility really in the abstract is an objective type of a fact, and it isn't. It is a way to describe what is a grossly disproportionate sentence. This court always anchors whether or not something is permanently incorrigible to whether or not the crime reflects it. Well, if you look at the transcript of the hearing, it seems to me that what the judge is doing is the kind of sentencing weighing of considering a variety of factors. I mean, I think he says that, you know, the factors in Miller, the Miller factors. It doesn't sound like the consideration of a specific direction from Miller. I think Miller goes a long way to answering and does answer this question on page 473. The court tells sentencers what they must do and why they must do it. They must consider the way mitigating circumstances of use may weaken the rationale for punishment. That is exactly what the court did here, and that's what our trial courts are used to doing. They consider mitigating circumstances and try to determine whether or not all of the circumstances would make a lesser sentence appropriate. Thank you, Counsel. Justice Thomas? Yes, thank you, Mr. Chief Justice. Counsel, do you think that you can reconcile Montgomery and Miller? I think that we have tried in good faith to reconcile both of them and to not quarrel with either of the decisions. Again, Mississippi found Miller announced a substantive rule three years prior to this court, and I think the way to do that is this. I think the substantive right at issue in Miller is the protection against grossly disproportionate punishment. The question then becomes, what is the process Miller prescribes for reducing the risk of a grossly disproportionate? And it isn't by wordsmithing a sentencing transcript or flagstacking them after the fact. It's by individualized sentencing. So what Miller adds to gross disproportionality is the consideration of use. And if you read page 734 of Montgomery, which petitioners cite often, to simply describe grossly disproportionate punishment, I think they can be reconciled. And I think you can see this because the court vacillates between various adjectives. Crime reflects permanent incorrigibility. Crime reflects irreparable corruption. Crime reflects transient immaturity, which shows that the court is using these terms as a shorthand descriptor, as does the fact that the court rejects the notion that a finding of incorrigibility is required on page 735. So how would it, other than the fact that it would not have been retroactive if Montgomery had not been decided, if the reasoning, if Montgomery was not on the books, would Miller have changed your procedures much? No, Your Honor. If I'm understanding the question correctly, that the state would have been applying Miller, it certainly changed the procedures after Miller because Mississippi, as determined by the Mississippi Supreme Court in Parker v. State, said that the state had a mandatory sentencing scheme. And so now the state has done what Miller requires. And really, I think our bottom-line conclusion, you can look at it this way, is that the 15 jurisdictions that Miller kind of highlights as what is constitutional, for example, in footnote 10, none of them required a finding of permanent incorrigibility. So what we're saying is that the constitutional regimes that Miller said are constitutional are indeed constitutional, and Mississippi is in line with those regimes. Thank you. Justice Breyer? It seems to me now there are two questions. One is, does Miller, after Montgomery, say that in order to sentence a juvenile to life without parole, he must be incorrigible, permanently incorrigible? Did the court say that? I think yes. So assume I'm right on that. Yes, that's a substantive rule. But then my question is the same as Justice Barrett. Why isn't that the end of the case? Judges do decide substantive rules all the time. And the question is, well, did they get the rule right? And so if the lawyer tells the judge the rule, and maybe he's inadequate if he doesn't, and then the judge starts talking about balancing factors, and then the Supreme Court starts talking about balancing factors in that state, well, they haven't got the law right. Substantive law. And the same thing happens. You do it again under the right law. End of case. Now, does that, what's wrong with what I just said? I think the beginning of the proposition that permanent incorrigibility somehow, in the abstract, not anchored to the crime, somehow became a substantive rule. I know that you disagreed with that. And so I asked you to assume that. Assume that I'm right on that. If Your Honor is right on that, then I would still say that the substantive law here was applied correctly because what we are concerned about, even in the permanent incorrigibility type of a context, is a grossly disproportionate sentence. And then you're remaking. I'm sorry to interrupt you, but what I'm interested in is on the assumption that it's an absolute rule. No incorrigibility, no life without parole. Okay? Absolute rule. Now, can we say, state, you enforce that rule just like you enforce any other rule of law? You're going to look at what the judge said. You'll look at the conditions and you say, did he have the law right in his mind when he did that? And however Mississippi chooses to do that within their realm of reason, that's up to Mississippi. I agree at that point that the procedure to enforce the rule would, at that point, be up to Mississippi. And here I do think it was argued, specifically, if you look on Joint Appendix 144, specifically Jones's argument was that transient immaturity, quote, quite likely was involved here and the judge rejected that. So I think what we're arguing over here is more of a procedural issue, but if that is a substantive issue, Mississippi applied it. And the judge rejected the argument. Justice Alito? Counsel, my problems with this case go a lot deeper than these procedural questions that have rightly occupied, well have occupied most of the argument. I don't really understand exactly what we are talking about. There are a lot of statements in Miller and Montgomery. And one of them, which a lot of the argument has focused on is the statement that a judge has to determine whether a particular defendant's crime, a particular minor's crime reflects transient immaturity or incorrigibility. As if those are the opposite sides of the same coin, but they're not. A crime could reflect transient, a crime could reflect transient immaturity. A person, a minor could be completely mature and yet capable of being rehabilitated. So what are we talking about? And keep in mind that of the three purposes of punishment that the court identified and applied in Miller and Montgomery, the first, which is retribution, has nothing whatsoever to do with rehabilitation. I think the best way Montgomery puts it is on page 734. And that's that Miller requires a senator to consider a juvenile's use in a particular context before determining that a life without parole is a proportionate sentence. So if you look at the substantive rights, being the protection against grossly disproportionate, the way we understand page 734 of Montgomery is to say that a crime reflects transient immaturity. That's simply describes a crime, the circumstances of which make a life without parole, grossly disproportionate. But Miller is an all things considered type of an analysis. It's not a myopic focus on one particular fact, one particular fact and one particular piece of evidence is not going to make a life without parole, either proper or improper. It truly is a, all things considered and see if mitigating circumstances are going to diminish all of the penal, penal logical justifications for the punishment. Thank you. Thank you counsel. Justice. So do we or counsel Montgomery says repeatedly on seven 34 and in other places that Miller did more than require a sentence or to consider a juvenile offenders youth before life without parole. So merely considering youth can't be enough under Montgomery. It established that the penal logical justification for life without parole collapse in light of the distinction distinctive attributes of youth more than once. It says, even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the eighth amendment for a child whose crime reflects unfortunate yet transient in maturity. Proportionality of sentencing looks at the nature of the crime, but Miller and Montgomery made very clear that we're looking at the nature of the offender. So is it your position that if a sentencing court says I've considered the Miller factors, but I think the crime and the crime does not reflect permanent incorrigibility, but I'm going to sentence him to LWOP anyway, because the crime was really horrific. Not if you understand a crime that reflects transient immaturity, simply to describe a crime, the circumstances of which make a life without parole grossly disproportionate. And if I can, I would like to take the two sentences, but how do you counsel? That would mean most would be because Montgomery says, it's the rare juvenile offender whose crime reflects irreparable corruption, multiple, multiple times in Miller and in Montgomery, the court says this should be rare. I agree with that, your honor. And I think I, the best way to read that is to say that this court looking at the whole, for example, it looks at statistics on footnote 10 was envisioning that many times mitigating circumstances, would the mitigating circumstances of use and all the surrounding circumstances would indeed make a life without parole. So if a judge said what I said, he's not permanently incorrigible, but I think the crime is serious. Would that violate Miller and Montgomery in your view? Your honor, I may be misunderstanding, but I think I look at those two questions a little bit differently. I know you don't, but answer mine. If a judge says, this is not a permanently incorrigible human person. Yes. If this court is using permanently incorrigible, not anchored from the crime, perhaps so perhaps a life without parole judgment would be proportionate. I don't think corrigibility is some discrete objective fact in the abstract about a person. And that is why the court time again, anchors it to what a crime reflects. Can the crime be sufficiently diminished by or explained by some quality of use? And again, nor do I think justice Kagan, Ms. Billable, I guess what I'm struggling with here is how on your theory, we could have labeled Miller, a substantive rule in Montgomery because I always thought that a substantive rule under T meant that there was a class of people who you couldn't, you know, you either couldn't criminalize their conduct or you couldn't sentence them to a certain way, but that that was the question that there was a class of people for whom particular punishment was impermissible. And you are saying that that's not what Montgomery does, but if it's not what Montgomery does, if Montgomery is only basically ensuring that a certain kind of process is accomplished, then how could Montgomery be saying that Miller was retroactive? Two ways. First Miller is substantive because it is premised on the protection against grossly disproportionate punishment, that there was a grave risk that a life without parole sentence would be grossly disproportionate in any given case. Miller says that on page four 70. If I could just interrupt you there, Ms. Billable, do you need to say that it satisfies Teague if there's a process rule that has an effect on substantive outcomes? I think that the key portion of Miller is that there was a grave risk of a disproportionate sentence. So if you look at page seven 31 or seven 33 of Montgomery, it says quote protection against disproportionate punishment goes far beyond the manner of determining a defendant sentence. Again, I guess what you're saying is that there's a process rule and that process is necessary to prevent a serious potential for bad substantive outcomes. Then that's enough under Teague. Is that correct? What Montgomery says is that there is a grave risk, not a quote unquote likelihood or quote unquote possibility. And you can see that on page seven 36. And so I think if you look at the class language in Montgomery, I'm not disagreeing with your honor that that language is in there, of course, but you can look at it for example as a numerator denominator, kind of a, kind of a set up the denominator being all juveniles convicted of homicide and the numerator being a class of defendants for which a life without parole sentence based on all the circumstances will be disproportionate. My point is that you cannot. Justice Gorsuch. Counsel, I'd like to pick up justice Kagan's question. And hopefully let me, before I do, let me just ask one quick question because Mr. Jones is on direct appeal from resentencing. Do you think he needs the right? He seeks to be retroactively applicable under Teague or is that just neither here or there?  your honor. The state has never actually argued that he was on, that he was, he was on collateral review. Okay. So we're on direct review and we're just trying to figure out what to do with let, let, let's say we think that Miller was a decision about processes and that Montgomery did what justice Kagan described and created a class of persons or the substantive right for a class of persons. What do we do about that? If Montgomery misstated the rule from Miller, what do we, how do we proceed? I of course don't agree that Montgomery set a new rule, but here's where I think you proceed. I think you look at the process that Miller itself prescribed because that process is going to effectuate a substantive rule. I don't think Miller and Montgomery read together could be said that the substantive rule that came out of one doesn't match the procedure. I think the process in Miller, which is repeated at least twice in Montgomery would give effect to any substantive rule, whether or not this court looks at that substantive rule coming from Miller or Montgomery. That's not normally how we think of rights. We think of some rights as process rights, regardless of what the substantive outcome and a substantive right, you have a right to a substantively reasonable for sentence sentence. For example, no matter what the process was that led to it, they're independent. They're complimentary to be sure, but one could be violated without the other. So that's normally how we think about it. And I guess you're asking, I think you're asking me basically ignored substantive aspects of Montgomery and just, just acknowledge that it misread Miller. Am I wrong about that? I actually think I'm trying to reconcile the two. And so what justice again was asking about, about the class of offenders. I think my point that I may not have finished or explained accurately is that there is going to be a class of offenders for which a life without parole sentence will be grossly disproportionate. The point is that you can't define that class categorically. And I don't think Montgomery ever says you can. And I think that that would just fall out of step with individualized sentencing to begin with. So I'm not disagreeing that there's going to be a class. I'm disagreeing that there's going to be a class that you can determine categorically. Instead, it's going to be a case by case basis on whether or not the mitigating circumstances and all the surrounding circumstances diminish the logical justification. Thank you. Justice Kavanaugh. Good morning, Ms. Noble. Mr. Shapiro said we shouldn't analogize this situation to lock it in the death penalty context, but rather to Atkins and Ford and consider this in essence, an eligibility requirement with a finding of some kind, not just a process that considers youth as a factor. And that raises, of course, the tension that Justice Kagan was identifying in Montgomery. And I think what she was getting at is that the key paragraph in Montgomery that says no finding effect is required, is some would say in tension with the conclusion that Miller was a substantive rule. Okay. And so if that's true and you've made an attempt to reconcile it, and I think you make a good point on that, but suppose that's true and we either have to follow the paragraph in Montgomery or follow the implication of the T conclusion, really say that paragraph is wrong in Montgomery or back away from it, which Justice Gorsuch was getting at a long lead up to a bottom line question. Why shouldn't we just require a finding of fact that the defendant is incorrigible? I think that that's a fairly illusory. I mean, a finding of fact that the defendant is incorrigible ignores much of Miller. It's also not an objective fact. It's going to be some type of judgment that a senator is going to have to make. And to get to that judgment, you're going to need an evaluated process and you're going to need to evaluate mitigating circumstances, which this court has always said is a normative type of a value call. And so I think this is more like the Woodson line of cases. And I think we know that because Miller does that. And I think if you really look at petitioners reply brief on pages 12 or pages 11 and 12, I think it underscores the absence of any constitutional mooring for the rule that the petitioner advances, because he doesn't really tell us, is this a legal rule or factual rule, which side would have the burden of proof that the judge or jury have to make the finding. If it is a specific finding, does the jury have to make it? And at that point, are we in the apprendee arena? So I think that that just suggests that we don't really know what the nature of the rule is, which suggests that it's probably not a constitutional rule. And we typically don't think about the eighth amendment as requiring specific findings. I think that's been completely rejected by this court in the cases that Miller cited, including Johnson versus Texas. Thank you. Justice Barrett. Do you agree that a defendant can bring an as applied eighth amendment challenge to a sentence, a juvenile sentence of life without parole? Yes, Your Honor, that there would be a gross disproportionality challenge. I think what I see Miller adding to gross disproportionality is the consideration of youth. And what would the standard be not permanent and courage ability? I take it. The more broad question of what this grossly disproportionate. Yes, I think so. Your Honor. And I think looking at it that way, dovetail dovetails quite nicely into why Miller is a substantive role and why Miller and why Montgomery said Miller was a substantive role, because you're trying to in Montgomery's own words on page seven 34, you're trying to determine that a life without parole is a proportionate sentence. How do you determine that? If you're not looking at the question of whether this is transient immaturity or a reflection of permanent incorrigibility, how is the public court to post it? What standard is it supposed to apply? I think that you Miller considers in all things types of an analysis and weighing mitigating circumstances. That's something trial courts do using the tools and the rules that trial courts normally do. I think the way we define a crime as to whether or not a crime reflects transient immaturity is a crime sufficiently mitigated by the distinctive characteristics of youth. So that all the circumstances surrounding the crime would make a life without parole grossly disproportionate. I mean, can you explain this crime by a particular quality of youth? It's always anchored to the crime. And I think that makes sense because in going forward with these Miller cases, you're not going to have any evidence of post sentencing rehabilitation. Often be able to say that. And I guess what I'm wondering is then, isn't it, aren't we back to whether it's procedural, just youth matters and we see that the trial court considered you. I do think that that is the procedure, but I think the substantive component and what Miller and Montgomery were concerned about is that not applying Miller retroactively would create too great of a risk that many juvenile sentence to mandatory life without parole prior to Miller or serving unconstitutionally disproportionate punishment with Montgomery reiterating that the protection against disproportionate punishment is the central substantive guarantee of the eighth amendment. Would you like to take a minute to wrap up? Thank you, chief justice. Miller Montgomery recognized that life without parole sentences for juveniles convicted of homicide are not necessarily unconstitutionally disproportionate, but they can be to reduce the risk of a disproportionate sentence and give effect to Miller's substantive right. The eighth amendment requires senators to give individualized consideration to mitigating circumstances of youth and all that accompanies it before imposing a life without parole sentence. The eighth amendment does not further impose specific procedures or require senators to follow a particular verbal formula. The sentencing court here had the benefit of Miller and took care to consider the implications of age, age related characteristics and the nature of the particularly brutal murder of Burtis Jones.  the sentencing court disagreed that youth and its attendant characteristics diminish the penological justification for a life without parole punishment. The appellate court affirmed that sentence and the court should be affirmed here. Thank you, counsel. Mr. Liu. Mr. Chief Justice and may it please the court. This court in Montgomery answered the question presented here when it made clear that Miller does not require trial courts to make an affirmative finding of permanent incorrigibility. This court should reaffirm that conclusion for two reasons. First, whether a crime reflects transient immaturity isn't an inquiry separate from the inquiry Miller prescribed. Under Miller, the court must consider whether the distinctive attributes of youth have diminished the penological justifications for life without parole. When, as in this case, the court determined that they have not, that is a determination that the crime does not reflect transient immaturity and no further finding is required. Second, even if transient immaturity required a separate finding, the court made such a finding here when it found petitioners' transient immaturity argument persuasive. For either of those reasons, the judgment below should be affirmed. Counsel, I'd like to ask you the question that I understood, Justice Kagan to be asking your friend from the state. I understand your submission to be that the requirement here is purely procedural. In other words, look at page 15 of your brief. The sentencers have the ability to take into account youth and attendant characteristics. And if they do that, then that's enough. Is that a fair reading? It's a fair reading of our brief that we think the inquiry Miller prescribes is enough to implement Miller's substantive rule. But I think this court need not go so far as to say part of the language in Montgomery announcing the substantive rule was right or wrong. We are willing to accept that language that draws a distinction between the two types of crimes we've been talking about. And our position is that even if you accept that language, the inquiry Miller prescribes is the inquiry to draw those distinctions. Well, but how does that under Teague, how then is this rule properly considered retroactive? Well, if we, even if we take Montgomery at its word that the substantive rule in Miller is a distinction between crimes reflecting transient immaturity and crimes reflecting permanent incorrigibility. The next question is, well what is a crime reflecting transient immaturity? And we think the court should just stick to what it said at the top of page seven 34 of Montgomery. It's there. I think it makes pretty clear that a crime reflects transient immaturity where the theological justifications, the life without parole have collapsed in light of the distinctive attributes of youth. And once you have that understanding of what a crime reflecting transient immaturity is in mind, then it lines up exactly with the inquiry Miller prescribes because Miller on page four 72 tells courts to ask, how do the distinctive attributes of youth diminish the theological justifications for a life without parole sentence? So justice Thomas, I have no questions. Chief justice. Justice Breyer. Justice Breyer. No, I have no questions. Thank you. Justice Alito, suppose a judge says this after a sentencing hearing. I don't think this minor who committed this crime a month short of his birthday is transiently immature. I think this person is highly intelligent and very mature, but I can't say that after 25 years in prison, he can't be rehabilitated. If he's released after 25 years, he will commit other crimes. What is the judge to do in that situation? We think that as a legitimate thing for a judge to say, well, what the judge is essentially saying is that the penological justifications for life without parole have not collapsed in one of the distinctive attributes of youth. The court is identifying an uncertainty about the future, but I think everyone agrees, including petitioner, that the burden can be placed on the defendant to show that a lower sentence is possible. So that uncertainty itself can't be dispositive and saying that the process is wrong. Well, I don't quite understand the question. Suppose that the defense brings in a dozen highly qualified psychologists who say, we think that just about anybody who commits a crime short of 18 can, after a period of time in a good correctional facility, be rehabilitated so that the person will not create a risk for society after the person is released. In that case, it's still within the judge's power to conclude that a life without parole sentence is appropriate if he thinks there's still penological justification to support such a sentence. So the court could reason, for example, that while there is a possibility of some rehabilitation, it's not going to be enough to show true rehabilitation, given how brutal and depraved the crime itself was. Montgomery and Miller used a lot of language, possibly quite loosely. They use certain terms interchangeably, corruption, redemption, incorrigibility, and then contrasted that with transient immaturity. I'm not quite sure how they all fit together. Well, I agree, Justice Alito, that those are not self-defining terms. I think it would help the analysis if the court were to make clear that the phrase crime reflecting transient immaturity means a crime where the penological justification for life without parole sentence has collapsed. And what are the distinctive attributes of you? And a crime reflecting permanent incorrigibility is a crime where those penological justifications have not collapsed. That would have the benefit of lining up the language in Montgomery with the inquiry Miller prescribes, but it would also have the benefit of allowing sentencing courts to conduct this inquiry the way they usually do, which is to consider the penological justification and whether there's a certain category of mitigating evidence and to ask whether that mitigating evidence is sufficiently compelling in a particular case. Thank you, Counsel. Justice Sotomayor. Counsel, you and your co-counsel basically want to say that Miller and Montgomery mean only, does youth mitigate the horribleness of this crime? But that's not what Miller and Montgomery said. And in fact, what Miller and Montgomery said repeatedly was it would be the rarest crime to receive life without parole. So how does your narrow proportionality approach yours and your colleague get to the nub of that? Well, I think it just might be the case that when, when a sentencing court asks whether the penological justifications for life without parole have collapsed and what are the distinctive attributes of you that in most cases the answer will be yes. And so I don't think there's any, most cases you're saying judges will find that these juveniles shouldn't be sentenced to life without parole or that in most cases they should. I'm saying that in most cases they shouldn't because the penological  justifications will collapse in light of the distinctive attributes of you. It's not a question about the test. The test is do those penological justifications collapse? It may be that the result in applying the test to cases out there in the world that the test is satisfied. That is the, how does the proportionality test test that? That's what I'm trying to get to. It's very rarely applied. In Hamlin versus Michigan, we said possessing 672 grams of cocaine justified a life without parole. Right. What, what, what a test I'm laying out about what a, what a crime reflecting transient immaturity is, is a test that the sentencer applies in the first instance. It's not a narrow proportionality. It's not a gross proportionality. It just is as a senator would ask in any case, whether certain mitigating evidence is sufficient to warrant a lower sentence. Now the question that was before this court in the cases you mentioned was an appellate standard and that appellate standard is more deferential to the sentencer. And so there is a level of grossness, a narrowness to the application of that. Thank you guys. Justice Kagan. I'd like to go back to a question that Justice Sotomayor asked Ms. Noble and get your view on it. Let's say that I'm a sentencer and I go through a hearing and at the end of the hearing I say, I've considered this defendant's youth and the attendant's characteristics of youth. I've done all that consideration. He's given me a lot of arguments. I've listened to it all. To be honest, I don't think that he, his crime reflects irreparable corruption. You know, he is not one of the incorrigibles that Montgomery and Miller talk about. I think in fact that it's possible that he could be rehabilitated, but I also don't think that his youth is sufficiently mitigating for this horrible crime that he committed. So I'm sentencing him to life without parole. I think that that would be a good punishment and a proportionate punishment. Is that okay on your, on your theory? No, Justice Kagan, it's not okay. We think a resentencing there would be appropriate, but it's not because the court failed to make any specific finding. It's because the court in that hypothetical has made contradictory statements, essentially saying both that the crime reflects transient immaturity and that it does not. And I think it's a pretty well accepted form of procedural error that when a defendant is sentenced to life without parole, he should be sent back to the court. I don't understand that Mr. Lou, because I took your arguments to be one that said, you know, these are just labels, the incorrigible label versus the transient immaturity label. What's necessary is that a judge take into account youth and consider it. And I think Ms. Noble talked about an all things considered way. And this judge has done that. He's considered youth and an all things considered way. He's balanced it against a whole bunch of other factors. And he said that notwithstanding the possibility of rehabilitation, a law sentence is appropriate. Is that not right? It's because the labels do refer to specific concepts in our view. And so when a court uses the phrase, crime reflecting transient immaturity, we're translating in that into, I think the penological justifications of youth that collapse. If the court then says in the next breath, well, actually I think the penological justifications have not collapsed. That's just saying two contradictory things. But what I'm not saying is that in every case, the court has to utter some magic words about transient immaturity. I'm saying when the court uses that phrase, but then says something that contradicts it, we should send it back to clear things up. Thank you. Justice Gorsuch. No questions. Thank you. Justice Kavanaugh. Good morning, Mr. Lew. I want to follow up on my understanding of how this plays out in your view. If the process was good and perfect, my understanding is that you can't raise a different eighth amendment argument that the individual sentence was still disproportionate. The answer to that is the process is what leads to the proportionality, at least as an eighth amendment matter. By analogy in the death penalty context, the Greg versus Georgia context, we have said proportionality is required, but it's achieved in two ways. One, you rule out the death penalty or life without parole for a certain class of offenses or offenders. And secondly, we require that the sentencer consider all the relevant mitigating and other relevant circumstances. That's the Lockett principle. And here, I just want to make sure your answer, if the process considers all the relevant circumstances, is there a separate argument as an eighth amendment matter that someone could still make? Well, they applied all the relevant factors, but I still think it's disproportionate. So we do justice Kavanaugh. I think the way to think about it is to compare this to the federal regime as no doubt you're familiar. You can bring a procedural reasonableness claim under say Rita, but then a substantive reasonableness claim under goal. And what we're saying here, this is a case about procedures. We're saying that there's nothing wrong with the procedures that were followed here. The court asked the right question and considered the right elements in answering that question. So there's no sort of procedural eighth amendment claim. We do think there's still room for a defendant to bring an as applied eighth amendment claim. This is a sort of claim that the chief justice entertained in his concurrence in Graham versus Florida. I don't think Miller or Montgomery forecloses the availability of that type of claim. Thank you. That's the spirit. I'm a little surprised to hear you say that you think that they can raise an as applied substantive challenge to the proportionality, because I mean, I guess this is part of the confusion about whether Miller and Montgomery are substantive or procedural, but let me ask you this. If all the procedures as justice Kavanaugh said were applied perfectly, what is the standard of review? Is it? Well, the standard is grossly proportional because the defendant is not permanently incorrigible. If there were a separate substantive eighth amendment claim brought justice Barrett. Yes. The standard of review for an appellate court would be the narrow proportionality standard that the chief justice applied in his concurrence in Graham versus Florida. Your objection here is really that it's making the state jump through too many hoops to put something actually formally on the record as a finding of fact. That's correct. Standard. It would be as if in the federal system, we had judges requiring trial courts to say,  I followed the parsimony principle. I really did consider whether this, this sentence was sufficient but not greater than necessary. Courts don't require that sort of uttering of magic words. And that's our objection to petitioner submission here. Okay. Thank you. Mr. Lula did it to wrap up. Thank you, Mr. Chief justice. I think this case turns on what the label crime reflecting transient immaturity is reflect. That means we think it means. A crime where the penological justifications of youth have collapsed and what have you. And if we, once we understand crime reflecting transient immaturity in that way, then there's no tension between Miller's substance and Miller's process. And there's no tension between page 77 34 of Montgomery, which draws the distinction and page seven 35, which says no finding is required. Thank you. Thank you. Council, Mr. Shapiro, three minutes for rebuttal. Thank you, Mr. Chief justice. I want to be very clear that we are not, we are not asking for any sort of formal or affirmative or express or magic words type of findings. All we are asking for is that the judge needs to understand that children who are capable of rehabilitation cannot be sentenced to life without parole. And to decide whether or not the defendant fits within the rule as the chief justice noted, we are not asking for much. All that we are asking for is for the rule of Miller and Montgomery, which is a rule stated in Miller reiterated in Montgomery seven times as an integral part of its holding that only permanent, the incorrigible juveniles can be sentenced to life without parole. And all we're saying is that means that there needs to be a determination. It can be an implicit one based on the usual presumption that the judge knows and applies the law correctly, a presumption that is overcome here or, or it can be something more explicit. That is for the state to decide. My friend from Mississippi said that a weakness of our position is that we haven't laid out all of the details, but that's, but that's the point. The details are for the state that is up to them in their discretion. But what there must absolutely be is a determination implicit or explicit that the defendant is incapable of rehabilitation before he or she is sentenced to life without parole. And I think what we've just heard from the other side is what a funnel attack on sorry, decisive and settled law is, is being made by my, my, my friends. My friend from Mississippi agreed that even a corrigible juvenile could be sentenced to life without parole. And my friend from the United States is dismissing the permanent incorrigibility rule as just a label and not really providing a direct answer to whether permanently incorrigible juveniles can be sentenced to life without parole. Montgomery provides that direct answer. Miller provides that direct answer and saying that trial courts need to distinguish between the two classes. And, and I think my friends from Mississippi, her comments illustrate what a free for all it is without a standard. It comes down to considering factors in deciding whether a lesser sentence is appropriate. All things considered, what we are saying is that there is a rule. This court has laid down that rule in Miller and Montgomery. It is part of the edifice of starry decisive and the stability interest that it protects. And this court does not lay down rules so that they can not be applied. Mississippi courts need to decide whether bread Jones is permanently incorrigible. Thank you. Thank you. Counsel. The case is submitted.